NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**LEITISHA MORENO,**
*Petitioner*

**v.**

**DEPARTMENT OF THE INTERIOR,**
*Respondent*

---

2020-1507

---

Petition for review of the Merit Systems Protection Board in No. DE-0752-18-0418-I-1.

---

Decided:  November 2, 2021

---

DANIELLE ROSENTHAL, Robins Kaplan LLP, New York, NY, argued for petitioner.

KELLY A. KRYSTYNIAK, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent.  Also represented by JEFFREY B. CLARK,  ALLISON KIDD-MILLER, ROBERT EDWARD KIRSCHMAN, JR.

---

Before NEWMAN, REYNA, and STOLL, *Circuit Judges*.

STOLL, *Circuit Judge*.

Petitioner Leitisha Moreno appeals the Merit Systems Protection Board's decision affirming the Department of the Interior's action removing her from her position due to unauthorized absence. Because we conclude that the Board failed to provide a proper analysis of the *Douglas* factors, we vacate and remand the Board's decision.

BACKGROUND

I

Ms. Moreno was employed by the Department of the Interior's Appraisal and Valuation Services Office as a Contract Specialist beginning in 2016. From July 24, 2017 to September 29, 2017, Ms. Moreno took leave under the Family and Medical Leave Act "due to [a] serious health condition that prevent[ed] [Ms. Moreno] from reporting to work." J.A. 304. Ms. Moreno returned to work part-time from October 2, 2017 to October 13, 2017. On October 11, 2017, Ms. Moreno requested "a 5 day per week telework schedule, on a temporary basis" and submitted medical documentation in support of her request. J.A. 301–02. The agency approved the request on October 17, 2017, permitting Ms. Moreno to "telework from home for a temporary time" until an office location was found for her to work in at the Denver Federal Center. J.A. 298.

On November 15, 2017, Ms. Moreno provided supporting documentation of her physical and mental health conditions and requested full-time telework from home through January 5, 2018, which the agency granted. The agency permitted her to work in an office space at the Denver Federal Center that the agency had prepared as an accommodation for her conditions until January 5, 2018.

On November 20, 2017, Ms. Moreno submitted another letter requesting that the agency excuse her from all work from November 20, 2017 to January 12, 2018. On November 20, 2017, the agency informed Ms. Moreno that she did

not have enough leave remaining to cover the eight-week period requested by her medical documentation. On November 21, 2017, Ms. Moreno requested an additional 240 hours of advanced paid sick leave. The agency denied the request and explained that she had to submit supporting medical documentation with her request. She provided a letter from her medical provider to the Human Resources department on November 22, 2017, stating that she was "currently unable to work due to her current serious medical condition" and that "[s]he is incapacitated for the performance of her work duties until further evaluation by a neurologist." J.A. 275–76. This letter—like all the letters provided by Ms. Moreno's medical providers—did not specify when Ms. Moreno could be expected to return to duty in a full-time capacity.

By November 28, 2017, Ms. Moreno's supervisor had not received the requested medical documentation but approved leave without pay (LWOP) on a weekly basis until the documentation was received. Ms. Moreno was informed that if she did not provide the documentation in an administratively acceptable form, "the tentatively approved LWOP [could] be converted to AWOL [absence without leave]." J.A. 279. She was also advised that, pursuant to agency policy, her employer needed to know when she could be expected to return to work because "[a]lthough supervisors are encouraged to grant the maximum amount of advance sick leave permissible, a supervisor may not advance sick leave to an employee when it is known or reasonabl[y] expected that the employee will not return to duty." J.A. 278.

On December 8, 2017, Ms. Moreno submitted supporting documentation that described her medical condition as "life-long," but indicated that she would be incapacitated until January 12, 2018 so she would have "time to be evaluated by a specialist." J.A. 272–73. The supporting documentation also stated that Ms. Moreno should be permitted to telework from her home on a full-time basis

when she is not incapacitated by her medical condition.  On December 22, 2017, the agency approved Ms. Moreno's request for advance sick leave through January 12, 2018.  J.A. 268–69.

Ms. Moreno submitted a letter from her medical provider dated January 4, 2018, stating that she should be excused from work until January 26, 2018 "due to her medical conditions that incapacitate her from completing her daily work tasks."  J.A. 266.  She did not return to work on January 12, 2018.  Ms. Moreno submitted another letter from her medical provider dated January 25, 2018, stating that she was "incapacitated until further evaluation pending follow-up on February 23, 2018[,]" but that she was "still able to complete her full position description from home via [t]elework."  J.A. 259.  At the same time, the letter stated that Ms. Moreno was "expected to have periods of incapacitation," that her "conditions [we]re chronic," and that there was no "anticipated end date to this period of incapacitation since her medical conditions [we]re ongoing and the flare-ups [we]re unpredictable in both frequency and duration."  *Id.*  She submitted another letter from her medical provider requesting that the agency "excuse [Ms.] Moreno from work February 26, 2018 through April 6, 2018 due to her ongoing medical and mental health conditions," explaining that "[s]he [wa]s incapacitated from doing her work duties and [wa]s on a temporary leave of absence."  J.A. 254.  The agency approved her request to "full time telework from [] home on a trial basis" from February 26, 2018 to March 30, 2018, based on her medical provider's assurance that she was still able to complete her full position description from home by telework.  J.A. 256.

Though approved for full-time telework, Ms. Moreno did not return to duty and accrued an additional 128 hours of LWOP from February 27, 2018 through March 27, 2018.  On March 22, 2018, the agency informed Ms. Moreno that she was expected to return to full-time duty by telework starting on April 9, 2018, which was the first business day

after the incapacitation period identified by her medical provider. The agency informed Ms. Moreno that no additional LWOP would be approved as a reasonable accommodation.

On April 9, 2018, Ms. Moreno submitted a letter from her medical provider stating that she would be on a temporary leave of absence from April 9, 2018 through June 1, 2018 due to her ongoing medical and mental health conditions. In response, on April 23, 2018, the agency issued a memorandum instructing Ms. Moreno to return to duty by April 30, 2018 because her "absences ha[d] continued beyond a reasonable time, and [her] position need[ed] to be filled by an employee available for duty on a regular full-time basis." J.A. 241–42. Continuing, the memorandum stated in bold text: "**You are hereby warned that failure to report to duty on a full-time basis or your continued absence, even if on approved leave, may result in disciplinary action, up to and including removal from Federal service.**" J.A. 242. When she did not return to work on April 30, 2018, the agency considered her to be in an AWOL status.

On May 23, 2018, Ms. Moreno submitted a letter from her medical provider stating that she could not work from June 4, 2018 to June 8, 2018, but that she could return to work part-time June 11, 2018 to July 27, 2018 for telework from home only. This letter explained that Ms. Moreno could return part-time for no more than twenty hours per week. The agency did not approve any request for part-time work.

The agency proposed to remove Ms. Moreno for excessive absences and for AWOL on June 8, 2018. On June 11, 2018, Ms. Moreno returned to work on a part-time basis, teleworking from home. On June 14, 2018, the agency rescinded and replaced its June 8 proposed removal with a new proposed removal that continued to state that "[a]s of today, you have failed to report for duty." J.A. 187–94.

Among other things, the proposing official analyzed each of the twelve factors set out in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280 (1981), stating with respect to factor 11 (mitigating circumstances): "I acknowledge that you have a medical condition(s) but the agency has accommodated you by allowing you to telework from your home." J.A. 193.   In her response to the proposed removal, Ms. Moreno argued that she was not "approached about an alternative to leave or other accommodations for [her] known condition" and that she was now "back to work, showing that with the appropriate measures in place, includ[ing] leave as an accommodation, [she] was able to do [her] job." J.A. 687–88.

The deciding official sustained the excessive absence and AWOL charges, removing Ms. Moreno from her position.   The deciding official examined each of the twelve *Douglas* factors, J.A. 41–44, explaining that although Ms. Moreno had no prior history of disciplinary actions or unsatisfactory performance ratings, her prolonged unavailability caused an extra workload for her colleagues, J.A. 42. Regarding *Douglas* factor 11, the deciding official concluded that Ms. Moreno's medical conditions were neither an aggravating nor mitigating factor.   Explaining that Ms. Moreno's "medical provider maintained repeatedly that [Ms. Moreno] could return to [her] Contract Specialist position with additional time for recovery," the official noted that the medical documentation did not support her inability to perform the essential duties of her position that would initiate the process for a possible reassignment. J.A. 44. The deciding official also determined that the seriousness of the offense, Ms. Moreno's position, effect on future performance, clarity of notice, availability of alternative sanctions, and potential for rehabilitation were aggravating *Douglas* factors.

## II

In an initial decision, an Administrative Judge sustained Ms. Moreno's removal, but determined that the agency had not established the excessive absences charge because it could not rely on the 240 AWOL hours for both charges. The Administrative Judge upheld the AWOL charge, examining the two factors relevant to the charge: (1) whether the employee was absent from duty; and (2) whether the absences were not authorized or a request for leave was properly denied. J.A. 8. The Administrative Judge concluded that the first factor was satisfied, given that neither party disputed that Ms. Moreno was absent from duty for 240 hours from April 30, 3018 until June 11, 2018. *Id.*

Regarding the second factor, the Administrative Judge found "no dispute that [Ms. Moreno] was incapacitated for duty for the dates that the agency charged the appellant with AWOL from April 30 through June 8, 2018" and that Ms. Moreno had exhausted all her leave by April 30, 2018. J.A. 9. The Administrative Judge then stated that "[t]he only disputes are whether there was a 'foreseeable end' to the absences and whether the appellant's absences were a burden." *Id.* (quoting *Joyner v. Dep't of the Navy*, 57 M.S.P.R. 154, 159 (1993)). The Administrative Judge determined that the agency "had good cause to be weary of the medical provider's weak assurances" of Ms. Moreno's ability to return to work full-time after July 27, 2018. J.A. 9. The Administrative Judge then concluded that the "agency's position is persuasive and supported by preponderant evidence." J.A. 10. Subsequently, the Administrative Judge concluded that Ms. Moreno's absences were a burden on the agency because the agency established by preponderant evidence that Ms. Moreno's unavailability created a significant hardship on the agency.

Based on these findings, the Administrative Judge upheld the AWOL charge and determined the agency had

established a nexus between the AWOL charge and the efficiency of the service.  The Administrative Judge also concluded that the agency met its burden to establish the reasonableness of the removal penalty based on the AWOL charge alone.  Without independently analyzing the *Douglas* factors, the Administrative Judge determined that it found "nothing unreasonable in the deciding official's weighing of the factors pertinent to the penalty."  J.A. 23.  Because of a lack of quorum at the Merit Systems Protection Board, this initial decision became the Board's final decision without further review.

Ms. Moreno appeals the Board's decision.  We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

### I

We must affirm the Board's decision unless it is: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence."  5 U.S.C. § 7703(c); *Higgins v. Dep't of Veterans Affs.*, 955 F.3d 1347, 1353 (Fed. Cir. 2020).  We may set aside agency determinations that fail to "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'"  *Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).

To take adverse action against an employee, an agency must (1) "establish by preponderant evidence that the charged conduct occurred," (2) "show a nexus between that conduct and the efficiency of the service," and (3) "demonstrate that the penalty imposed was reasonable in light of the relevant factors set forth in *Douglas*."  *Malloy v. U.S.*

*Postal Serv.*, 578 F.3d 1351, 1356 (Fed. Cir. 2009) (first citing 5 U.S.C. § 7701(c)(1)(B); and then citing *Douglas*, 5 M.S.P.R. at 307–08).

## II

## A

Agencies are required to demonstrate that they engaged in reasoned decision-making when reaching a determination. *See State Farm*, 463 U.S. at 52. An agency decision is arbitrary and capricious if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* at 43. Here, Ms. Moreno urges us to set aside the agency's revocation of LWOP and charge of AWOL because Ms. Moreno had a legitimate and documented medical reason for her absence.

To the extent Ms. Moreno suggests that an agency cannot charge an employee with AWOL no matter the length of the absence and other factors so long as there is a medical reason for the absence, we disagree. We are aware of no such per se rule; nor does Ms. Moreno cite any case law or other support for such a contention. Here, the agency explained its reasons for charging AWOL in the April 23, 2018 memorandum, the Notice of Proposed Removal, and the Decision on Proposed Removal. The Agency explained that Ms. Moreno's unavailability to work due to her medical condition created a significant hardship to her division and co-workers, who were already short-staffed; that the agency made attempts to accommodate Ms. Moreno by approving leave for six months and telework; that her position needed to be performed full-time; and that her absences continued beyond a reasonable time.

In this case, the agency's explanation for charging AWOL is sufficient for us to conclude that the removal was

the product of reasoned decision-making. Accordingly, we affirm the Board's decision sustaining the AWOL charge.

B

We nonetheless vacate the penalty of removal and remand the case because the Board failed to provide a proper analysis of the *Douglas* factors. When the Board sustains fewer than all of the agency's charges, it should determine the maximum reasonable penalty unless the agency has indicated that it desires that a lesser penalty be imposed on fewer charges. *Lachance v. Devall*, 178 F.3d 1246, 1260 (Fed. Cir. 1999). In this case, the agency did not indicate that it desired a lesser penalty than removal in the event the Board sustained only the AWOL charge. Thus, under *Lachance*, the Board was in the position to determine the maximum reasonable penalty. We have held that where, as here, the Board must independently determine the penalty, the Board is required to independently balance the relevant *Douglas* factors. *See Tartaglia v. Dep't of Veterans Affs.*, 858 F.3d 1405, 1408 (Fed. Cir. 2017) (explaining that the Board is required to independently balance the relevant *Douglas* factors when reviewing agency penalties upon fewer charges than those brought by the agency) (citing *Lachance*, 178 F.3d at 1257).

The Board failed to do so here. Under *Lachance* and *Tartaglia*, the Board should have independently considered all of the *Douglas* factors, including Ms. Moreno's potential for rehabilitation given that she had returned to work part-time, whether Ms. Moreno's medical conditions were a mitigating factor, and whether lesser sanctions than removal would have been adequate in Ms. Moreno's case. *See Purifoy v. Dep't of Veterans Affs.*, 838 F.3d 1367, 1372 (Fed. Cir. 2016). Instead, the Board merely listed the factors the deciding official considered aggravating and those he considered mitigating. Rather than an independent analysis, the Board then summarily concluded that it "f[ound] nothing unreasonable in the deciding official's

weighing of the factors pertinent to the penalty" and that "the absences pertinent to [the AWOL charge] suffice to render the agency's removal penalty within the bound of reasonableness." J.A. 23. The Board's remarkably short and deferential analysis falls far short of what is required under our precedent.

At oral argument, the Government urged our court to piece together what we think would be the Board's *Douglas* analysis from statements in other portions of the Board's opinion. Oral Arg. at 23:30–25:30, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20-1507_05062021.mp3. Citing *Robinson v. Department of Veterans Affairs*, 923 F.3d 1004 (Fed. Cir. 2019), the Government similarly argued that we could glean the Board's analysis from the entirety of the opinion. *See* Resp. Br. 31. We decline the Government's invitation, particularly in this case where the Board's opinion leaves us unaware of its analysis of *Douglas* factor 11—mitigating circumstances including medical illness and mental impairment. Thus, the Board's analysis lacked the independent analysis required by *Tartaglia* and requires a remand.

On remand, we advise the Board to be mindful of its treatment of Ms. Moreno's medical evidence in its *Douglas* analysis. We note that the deciding official's treatment of Ms. Moreno's medical evidence in the context of the *Douglas* factors was seemingly inconsistent. On the one hand, the deciding official stated: "The Agency was aware that your absences were beyond your control due to your medical condition." J.A. 41. Likewise, the deciding official stated: "[Y]our supervisor and I have lost confidence in your dependability, i.e., your ability to perform the duties of your position on a consistent, full-time basis, due to your excessive absences and the extended period of AWOL." J.A. 42. At the same time, however, in concluding that *Douglas* factor 11, mitigating circumstances, was an aggravating factor, the deciding official stated: "Your medical provider maintained repeatedly that you could return to

your Contract Specialist position with additional time for recovery from your medical conditions.  The medical documentation did not support your inability to perform the essential duties of your position . . . ."  J.A. 44.  In addition, we ask that the Board more clearly address whether Ms. Moreno's ability to work part time supports rehabilitation as a mitigating factor.

## CONCLUSION

For the reasons set forth above, we vacate and remand the Board's decision.

## VACATED AND REMANDED

### COSTS

Costs to Petitioner.